UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LAMAR CHAD COFFEY,

    Petitioner,

-vs-                                                Case No. 8:15-cv-2398-T-02CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Lamar Coffey, a Florida prisoner, initiated this action for habeas corpus relief pursuant to 28 U.S.C. Section 2254 (Dkt. 1). Upon consideration of the petition, the court ordered Respondent to show cause why the relief sought in the petition should not be granted (Dkt. 8). Thereafter, Respondent filed a response in opposition to the petition (Dkt. 11).

Mr. Coffey alleges one ground for relief in his petition:

Counsel was ineffective for failing to object to "several" sleeping jurors during critical testimony during trial (Dkt. 1, p. 6).

## I. PROCEDURAL HISTORY

Mr. Coffey was convicted by a jury of first-degree felony murder and attempted robbery with a deadly weapon (Respondent's Ex. 1, Vol. I, p. 161). He was sentenced to life in prison on the murder conviction and 15 years in prison on the attempted robbery conviction (Id., pp. 165-72). His convictions and sentences were affirmed on appeal (Respondent's Ex. 5).

He filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure (Respondent's Ex. 7). The motion was denied (Respondent's Ex. 9), and the denial

affirmed on appeal (Respondent's Ex. 11).

He subsequently filed a supplement to his Rule 3.850 motion in which he raised two additional grounds of ineffective assistance of trial counsel (Respondent's Ex. 14). The state post-conviction court denied the first claim and directed the State to respond to the second (Respondent's Ex. 15). After the State responded (Respondent's Ex. 16), the post-conviction court denied the second claim (Respondent's Ex. 17). The denial of the supplemental claims was affirmed on appeal (Respondent's Ex. 20).

Petitioner thereafter filed his federal habeas petition in this court (Dkt. 1).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable

2

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the

3

presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,'

and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## III. ANALYSIS

Mr. Coffey contends that "[c]ounsel was ineffective for failing to object to 'several' sleeping juror's [sic] during critical testimony during trial." (Dkt. 1, p. 6). He asserts that "[s]everal court officials observed several juror's [sic] sleeping during critical testimony." (Id.). He further states that although "[t]he trial court was made aware of this matter[,]" the court "only removed one of the juror's [sic] from the panel, but kept the others on...." (Id.).

In state court, Mr. Coffey raised a similar claim in Ground Two of his supplement to his Rule 3.850 motion (Respondent's Ex. 14, pp. 31-34). There, Mr. Coffey alleged that counsel "failed to object to several jurors sleeping throughout the trial and not being attentive during the most critical testimony introduced into evidence." (Id., p. 32). He asserted that the trial transcripts showed that he, the trial judge, and the prosecutor noticed several jurors "dozing." (Id.). He argued that because the jurors were "dozing," he was "technically convicted by a 10-member jury which violated his Sixth Amendment rights...." (Id., p. 33). He further argued that counsel "failed to preserve this

5

'harmful' error for direct appeal" and bring the issue to the trial court's attention (Id.).

In denying the claim, the state post-conviction court stated:

> In claim two of his supplemental motion, Defendant alleges ineffective assistance of counsel. When ineffective assistance of counsel is alleged, the burden is on the person seeking collateral relief to allege the grounds for relief specifically and to establish whether prejudice resulted. Effective assistance of counsel does not mean that a defendant must be afforded errorless counsel or that future developments in law must be anticipated. *Meeks v. State*, 382 So. 2d 673 (Fla. 1980). In *Strickland v. Washington*, the U.S. Supreme Court provided the following standard for ineffective assistance of counsel:
>
>> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable . . . . [T]he proper standard for attorney performance is of reasonably effective assistance.
>
> *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). In *Downs v. State*, the Florida Supreme Court stated that a defendant must prove prejudice affirmatively. *See Downs v. State*, 453 So. 2d 1102 (Fla. 1984). The test for prejudice is
>
>> that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> *Strickland*, 466 U.S. at 694.
>
> However, even if a defendant's allegations are sufficient to state a claim for relief, a motion may be summarily denied, without an evidentiary hearing, if the record conclusively refutes the allegations and demonstrates that the defendant is not entitled to relief. *See Anderson v. State*, 627 So. 2d 1170 (Fla. 1993). An evidentiary

hearing will be required unless the motion is facially insufficient or the record demonstrates that the defendant is not entitled to relief. *Id.*

In claim two of Defendant's supplemental motion, Defendant alleges that Trial Counsel's failure to object to several jurors sleeping throughout the trial constitutes ineffective assistance. Specifically, Defendant alleges that during the trial, the transcripts show that the defendant, along with others, noticed several jurors "dozing," and that because the jurors were sleeping during the most critical testimony introduced into evidence, his Sixth Amendment rights were violated. Defendant further alleges that had counsel's assistance not been defective, there is a strong probability that the outcome of the Defendant's proceedings would have been different.

In its response, the State alleges that trial counsel was not ineffective, because counsel did address the sleeping juror issue with the Court on the record, by moving for a mistrial when it came to his attention that there were jurors who were dozing. Additionally, the State alleges that Defendant was not prejudiced by any alleged ineffectiveness, because the sleeping issue was full [sic] addressed by the Judge during the trial, the juror in question did not participate in deliberations, the testimony during which the sleeping took place was recorded and entered into evidence, and once it was noticed and discussed by the Court, the Court gave an instruction to the jury which directed them to notify the Court if they were in need of a break.

After reviewing the allegations, the court file, and the record, the Court finds the State's response persuasive on this point. A review of the transcript from the trial shows that a thorough discussion regarding the sleeping juror concerns took place on the record, and trial counsel acted effectively:

> THE COURT: Ladies and gentlemen of the jury, step in the jury room for just a moment, please. I have something I have to bring to counsel's attention.
>
> (Jury exits.)
>
> THE COURT: The jury is not in the courtroom. Make yourselves comfortable in the audience, please. I have been observing, I believe it's juror — I believe it's — I believe it's Ms. Rubio, juror 6 in the first row, the blonde lady. She's been dozing. And as Mr. Lasswell gets back here, he may be able to verify it. I think your client observed it, too, because he kept looking at me. Looking at her and looking at me. Had he told you that or —

7

MS. KESTER: Your Honor, just as you said "Turn the tape off," he turned to me. My client turned to me and said one of the jurors has been sleeping. That was the first I noticed it.

THE COURT: Well, she's been closing her eyes and opening. It hasn't been for over a minute, but it's happened four or five times. Did you observe her as well?

THE DEFENDANT: Uh-huh.

THE COURT: All right. Fine. What do you want me to do? Do you want to have a minute?

MR. BOLDT: If we could have a moment to discuss with our client?

MR. GALE: And, Judge, for the record, during the course of the trial I've observed, in addition to — I didn't actually see Ms. Rubio this morning. But at least two other jurors at various times did appear to be dozing.

THE COURT: What do you want me to do?

MR. GALE: I'm not asking the Court to do anything at this time, Judge.

MS. KESTER: We're asking for a moment with counsel.

MR. BOLDT: Yes.

MR. GALE: That's fine, of course.

(Court in recess.)

THE COURT: Have you had enough time to talk to your client?

MS. KESTER: We have, Your Honor. Could we approach with the State?

THE COURT: You don't have to approach. Tell me what you want to do.

MR. BOLDT: Your Honor, I've had an opportunity to discuss it with Mr. Coffey and at this point, since we don't know what information

8

the juror may have missed —

THE COURT: Well, it was just during the presentation of the taped statement.

MR. BOLDT: Well, this particular juror at least, Your Honor — if another juror has either dozed off or slept through some of the proceedings that might be more difficult to cure. At this point, I'm asking for a mistrial. In the alternative, we can bring in Ms. Rubio and ask her how much she recalls and when she recalls sleeping.

THE COURT: Well, if I bring in Ms. Rubio and directly ask her the question it's going to embarrass her, number one.

MR. BOLDT: I understand.

THE COURT: Number two — all right. Fine. I'm going to deny your motion for mistrial. How about if I admonish the entire jury, "If you're having trouble staying awake, just simply let me know and I'll recess appropriately," and we'll go from there? If you want me to discharge Ms. Rubio, I will consider discharging her.

MR. BOLDT: I may, at the close of all the proceedings, Your Honor, ask that we simply consider her one of the alternates and let one of the other alternates sit in for her.

THE COURT: That's a reasonable alternative.

MR. GALE: I agree.

THE COURT: Okay. Do you want me to admonish the jury if they're having trouble staying awake to please —

MR. BOLDT: I'd like to keep it as positive, of course, as possible to avoid embarrassing anyone.

THE COURT: Well, do you want me to talk to them about it or not?

MR. BOLDT: What I'd like, Judge, would be to simply say, "Listen, it's been a long trial. We appreciate your attention. If anybody ever needs a break, you know, we'll be more than willing to entertain" —

THE COURT: Okay. Fine.

MR. BOLDT: -- "a short break to keep everyone fresh."

THE COURT: Is that all right with the State?

MR. GALE: That's fine.

THE COURT: Okay. Bring them out.

MS. KESTER: Before you do, Judge, just one moment. If Mr. Gale again would put on the record what was the name or the number of the other juror that he saw.

MR. GALE: Number 1, Mr. Belton, and also Mr. Perez, who I believe is number 4. I have observed both of them dozing.

THE COURT: Please let me know in the future if you see that.

MR. GALE: Okay. And it hasn't been something where I thought something needed to be said.

THE COURT: Okay.

MR. GALE: But I had observed them dozing as well. But I just —

THE COURT: Let me ask a couple of questions. Mr. Coffey, have you had enough time to talk, to discuss this with your attorneys?

THE DEFENDANT: Yes, sir.

THE COURT: Are you comfortable with the decision they've made right now?

THE DEFENDANT: Yes, sir.

THE COURT: Are you sure?

THE DEFENDANT: Yes, sir.

THE COURT: Very well. Bring the jury out, please.

THE BAILIFF: All rise.

(Jury enters.)

> THE COURT: Thank you. Make yourselves comfortable. Ladies and gentlemen of the jury, this has been somewhat of a long trial and I know some moments are probably more exciting than others. If at any point in time during this trial you feel you're getting tired and need a break, do not feel like you're pushing the envelope by simply raising your hand and letting me know. I will give you that break if you need it. Okay? Anybody have any questions? Everybody okay? You may proceed.

> *See* Transcript, pp. 834-838.

> Additionally, the Court notes that juror Rubio, referenced above, was dismissed as an alternate at the close of the evidence. *See* Transcript, p. 1192.

> Therefore, the Court finds that the sleeping juror issue was fully addressed at trial, and that there is no need for an evidentiary hearing. *See Reynolds v. State*, 99 So. 3d 459 (finding that summary denial of a sleeping juror claim without an evidentiary hearing was appropriate where the court brought the issue to the attention of all involved, conferred with both parties, and allowed juror to continue upon the request of the defense counsel). Here, the jury was dismissed so that the Judge could confer with the parties regarding the sleeping juror, Ms. Rubio. During the course of the discussion, counsel spoke with Defendant, moved for a mistrial, and then after his motion for mistrial was denied, requested a curative instruction to all jurors to ensure that they stayed alert and attentive. Further, the parties and Judge all agreed that a remedy could also be to dismiss the sleeping juror, Ms. Rubio, as an alternate, which the Court did at the conclusion of the evidence. Defendant, thus, cannot show that counsel was ineffective, nor can he prove that he was prejudiced by counsel's performance.

(Respondent's Ex. 17, record pp. 2113-18).

The state post-conviction court's determination that defense counsel did not render deficient performance was not objectively unreasonable. The record belies Mr. Coffey's contention that defense counsel failed to "object" to the sleeping jurors and preserve the issue for appeal. Counsel moved for a mistrial on the ground that noone knew what testimony or evidence the dozing jurors missed, and argued that "if another juror [other than Ms. Rubio] has either dozed off or slept through some of the proceedings that might be more difficult to cure." (Respondent's Ex. 1, Vol. VIII,

transcript pp. 835-36). The trial court nevertheless denied the motion for a mistrial (Id., transcript p. 836). Accordingly, by moving for mistrial, counsel did "object" to the sleeping jurors and preserved the issue for appeal. *See Aills v. Boemi*, 29 So.3d 1105, 1108 (Fla.2010) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.") (citations omitted).

Even if the court were to assume counsel was ineffective with regard to the issue of the sleeping jurors, the state post-conviction court's determination that Mr. Coffey failed to show prejudice likewise was not objectively unreasonable. With regard to Ms. Rubio, the juror that the trial judge and Mr. Coffey noticed dozing, she was an alternate juror who was dismissed from the jury at the end of the trial and before the jury deliberated (Respondent's Ex. 1, Vol. X, transcript pp. 1192-93). Accordingly, Mr. Coffey cannot show prejudice from Ms. Rubio dozing off during trial. *See, e.g., United States v. Medley*, 386 F. App'x 12, 14 (2d Cir. 2010) ("the probability of prejudice. . .is practically non-existent as the juror who allegedly saw [the defendant in handcuffs] was dismissed the same day and did not participate in deliberations.").

Mr. Coffey likewise fails to show prejudice with regard to the other two jurors, Mr. Belton and Mr. Perez, whom the prosecutor said he saw "dozing" "at various times" "during the course of the trial." Mr. Coffey does not allege or show that these jurors missed large portions of the trial or that the portions during which they were dozing were critical to the defense. And the prosecutor informed the trial judge that although he noticed Mr. Belton and Mr. Perez dozing at some point during the trial, "it [wasn't] something where [he] thought something needed to be said." (Respondent's Ex. 1, Vol. VIII, transcript p. 837). Consequently, it is impossible to tell whether those jurors' "dozing" was prejudicial to Mr. Coffey. In fact, it is just as likely that their dozing

prejudiced the State and helped Mr. Coffey if they were dozing during testimony beneficial to the State. *See, e.g., United States v. Fernandez-Hernandez*, 652 F.3d 56, 75 (1st Cir. 2011) ("A sleeping juror does not violate a defendant's due process rights unless the defendant can show he was prejudiced to the extent that he did not receive a fair trial. . . .[Defendant's] pointing out that a single juror at one point in the trial fell asleep does not by itself establish such prejudice. . . .") (internal citation omitted).

Mr. Coffey has failed to demonstrate that the state court's denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, he is not entitled to federal habeas relief.

Any of Mr. Coffey's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The **Clerk** shall enter judgment accordingly and close this case.

2. A Certificate of Appealability (COA) is **DENIED** in this case because Mr. Coffey cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). And because Mr. Coffey is not entitled to a COA, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on October 23, 2018.

WILLIAM F. JUNG
United States District Judge

SA: sfc
Copies to: Petitioner *pro se*; Counsel of Record